UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WEI YAN YAN,

                     Plaintiff,

              -against-              **MEMORANDUM AND ORDER**

520 ASIAN RESTAURANT CORP. d/b/a     13-CV-2417 (KNF)
CHEF YU, and TEO SU JIN,

                 Defendants.
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

       Following a bench trial, in this action based on violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and New York Labor Law ("NYLL"), the plaintiff obtained a judgment against the defendants. Before the Court is the plaintiff's motion for an award of attorneys' fees and costs. The defendants oppose the motion.

## *Plaintiff's Contentions*

       The plaintiff seeks $99,025, in attorneys' fees and $6,490.25, in costs. He contends that any duplicative or administrative items have been removed from the billing records. According to the plaintiff, he prevailed against the defendants and received a judgment slightly more favorable than he would have received under the September 2013 settlement proposal. The plaintiff contends he acted in good faith when he did not agree to a strict confidentiality clause and a general release of all claims in the proposed settlement, and the failed settlement discussions should not preclude recovery of his attorneys' fees. According to the plaintiff, his fee application includes compensation for the hours spent preparing the fee application.

In support of his motion, the plaintiff submitted an affirmation by his attorney, D. Maimon Kirschenbaum ("Kirschenbaum"), a partner at Joseph & Kirschenbaum LLP ("JK"), with: (a) Exhibit A, a copy of the time records kept by the firm in connection with this action; (b) Exhibit B, a copy of the expense report kept by the firm in connection with this action; and (c) Exhibit C, a proposed order. Kirschenbaum is the managing partner at JK, which handles, almost exclusively, employee rights matters and he specializes in wage and hour litigation. Since graduating from Fordham University School of Law in 2005, Kirschenbaum's practice has focused on representing food-service workers respecting employment-related claims against the hospitality industry.

Kirschenbaum contends that "Mr. Kadushin" ("Kadushin") graduated from New York University School of Law in 2000. Kadushin worked as a public defender for approximately 9 years before joining JK, in October 2009. The majority of Kadushin's "current docket involves wage and hour lawsuits against the hospitality industry."

Douglas Weiner ("Weiner") graduated from Villanova Law School. Prior to joining JK, Weiner worked for 30 years as a senior trial attorney at the United States Department of Labor, prosecuting wage and hour violations. Weiner also worked for the Epstein Becker law firm from 2008 to 2013, representing employers.

Denise Schulman ("Schulman") graduated from New York University School of Law in 2008, and joined JK in January 2009. Since joining JK, Schulman has practiced exclusively in the area of wage and hour discrimination cases.

Leah Berenholz Seliger ("Seliger") graduated from Georgetown University Law Center in 2002. According to Kirschenbaum, "[b]efore becoming self-employed," Seliger worked at the City of New York Office of Labor Relations from 2011 to 2012, as well as various law firms.

Kirschenbaum asserts that over the last several years, JK has filed dozens of class and collective actions on behalf of food-service industry employees, and some of JK's cases "have changed the landscape of wage and hour class and collective litigation, such as <u>Shahriar v. Smith & Wollensky Rest. Group, Inc.</u>, 659 F.3d 234 (2d Cir. 2011), in which the court held that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state-law claims pursued on a class basis under Fed. R. Civ. P. 23, and <u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321 (S.D.N.Y. 2010), in which the federal court applied retroactively the state court's law that mandatory charges include gratuities. Moreover, Kirschenbaum contends, JK has increased awareness of wage and hour laws in New York City's restaurant industry, and its work has attracted significant media attention.

In his affirmation, Kirschenbaum provides "a chart representing each attorney's hours and the hourly request":

| Individual | Rate | Total Hours | Total |
| --- | --- | --- | --- |
| D. Maimon Kirschenbaum | $375 | 87.7 | $32,887.50 |
| Douglas Weiner | $350 | 159.5 | $55,825.00 |
| Matthew Kadushin | $325 | 12.9 | $ 4,192.50 |
| Leah Seliger | $300 | 10 | $ 3,000.00 |
| Denise Schulman | $300 | 2.8 | $   840.00 |
| Paralegals | $100 | 22.8 | $ 2,280.00 |
| TOTAL: | | | $99,025.00 |

Kirschenbaum maintains that JK undertook to prosecute this action on a contingent basis in the face of substantial risk. The plaintiff seeks $6,490.25, in costs.

*Defendants' Contentions*

The defendants contend that the hours and rates billed are excessive, and the "plaintiff's

attorneys' weighted average billing rate is too high due to the overstaffing of a simple case." With respect to the billing rates, the defendants contend that the "weighted average" hourly rate is $334.88, but "$200 would be far more reasonable." They assert that, "[d]uring the period from intake to September 12, 2013," Kirschenbaum billed 0.7 hours, Schulman 0.3 hours and paralegals 0.8 hours, which makes sense because, had the plaintiff not "backed out of the settlement he had agreed to, the attorneys would have received $26,483 for their efforts, a nearly six-fold return on their investment of time."

      Concerning the hours worked, the defendants assert that they should be reduced because the plaintiff "was acting in bad faith when he backed out of the settlement he had agreed to in August 2013, intending to obtain a larger recovery with false testimony." The defendants contend that, if the general release terms of the proposed settlement offer of $52,967 were against public policy, as the plaintiff now claims, he "could simply have ignored them." Rather, the defendants assert, the plaintiff's primary concern was money in general and attorneys' fees in particular, because, had the settlement agreement been signed, the attorneys' "fees would have been no more than $4,182.50, the firm's total billings through September 12." The defendants contend that it is "no exaggeration to say that the contingent-fee retainer agreement, which plaintiff has not produced, may have been the cause of plaintiff's backing out of the settlement." The defendants maintain that "it is difficult to identify wasted hours where all of an attorney's tasks in a day are lumped together." However, "a few things stand out," such as: (1) "[s]omething in excess of 2 hours is charged for a motion for reconsideration that was never filed"; and (2) "[a]t least 19.9 hours are charged for a motion *in limine* to preclude certain evidence mentioned by defendants in the Joint Pretrial Order – not for studying our answer or preparing a reply, just the original motion – as to which plaintiff's attorney never conferred with defense counsel in an attempt to resolve the

4

issue." Moreover, "[i]t is hard to see why Mr. Weiner billed 5.1 hours in connection with the final pretrial conference, while Mr. Kirschenbaum billed 0.8 hour[s] for apparently the same thing." The defendants assert that "[t]here is a lot of 'reviewing' in the same sheets," and "at least 40 hours should be subtracted from the 295.7 they billed." The defendants contend that a reasonable paying client would expect a weighted average billing rate of $200, and applying that rate to 250 hours of work would yield a presumptive fee of $50,000, subject to downward adjustments.

The defendants contend that the plaintiff did not prevail on his claim for purchase and maintenance of bicycles, and "he cannot be said to have prevailed by receiving judgment for the liability admitted by defendants" in the settlement talks and calculations, discovery and the pretrial order. The defendants maintain that, "[o]f the issues that were contested, defendants' position was upheld on almost every issue of law and fact," and the plaintiff "prevailed only on issues of willfulness for purposes of the federal three-year statue of limitations and liquidated damages," which did not require long hours "from high-priced lawyers."

The defendants contend that the recovery, after the bench trial, of $56,755.27 was not much more than $52,967, offered to the plaintiff in the settlement proposal he rejected. The defendants assert this was a simple case in which the defendants admitted violations of minimum wage, overtime, spread of hours and notice requirements, and the only issues that were at all novel or particularly difficult were credit for employee taxes paid, credit for credit card company commissions paid and pre-2011 tip credits, which were all minor issues in the case, especially since the plaintiff realized that the defendants' position on taxes was correct and he stipulated to small credits. The defendants contend that very little skill was necessary for most of this case, since the complaint was in a standard format, the restaurant was not unusual, 46 documents were produced by the parties during discovery and two half-day depositions were conducted. The

defendants assert that "[i]t took some skill to deal with plaintiff, but the attorneys failed to get him to tell the truth." Additionally, the amount of the fees should be reduced due to the plaintiff's bad faith with regard to the settlement, proposed after months of negotiating, and the "idea that plaintiff went all the way to trial to avoid a release provision is poppycock. Plaintiff supposedly had all sorts of additional actions he was going to bring against defendants, but he has yet to do so." The defendants contend:

> Plaintiff's main concern was money, and he voiced vehement objection to the attorneys' fees coming out of the $80,000. The day after the meeting, he demanded an off-the-record additional $50,000, with no mention of the confidentiality and release provisions. . . . By December, he wanted $150,000 and a job, or $180,000 without a job; he did not offer to take less money if the defendants would drop confidentiality and release [provisions]. . . . A job was now important to him, and those provisions were irrelevant. By March 2014, he wanted more than $200,000.

According to the defendants, the fees on both sides accrued because of the plaintiff's bad faith refusal to settle.

The defendants' attorney, Lawrence Joachim ("Joachim"), submitted his declaration in opposition to the plaintiff's motion. He states that he was retained on September 20, 2013. According to Joachim, on November 8, 2013, he received a call from an employee at The Cottage Restaurant, owned and managed by one of the investors in the defendants' business, informing him that the plaintiff was "making trouble." Joachim walked over to the restaurant and learned that the plaintiff made threats against the defendants. Joachim contends that, on December 5, 2013, the defendants made a settlement offer to the plaintiff, which included the confidentiality and release provisions. According to Joachim, the plaintiff wanted either $150,000 and a job as a deliveryman for the restaurant, or $180,000 without the job, none of which was acceptable to the defendants. Joachim contends that, on February 28, 2014, the defendants made a new settlement offer, to which no response was received.

In support of their opposition to the motion, the defendants also submitted a declaration by their attorney, Jenny J. Shen ("Shen"). Shen explains that she was retained by the defendants shortly after the plaintiff filed the complaint, which occurred on April 11, 2013. Shen commenced settlement discussions with Kirschenbaum almost immediately after being retained, and those discussions continued over a period of several months. On July 12, 2013, the defendants filed an answer, but complying with discovery obligations was postponed in light of the ongoing settlement discussions. Shen states:

> In August, we agreed to a settlement with plaintiff's attorney in the total amount of $80,000. At the direction of his attorneys, $52,967 of this amount was stipulated to be paid to plaintiff as damages, $26,483 was for attorney's fees, and $550 was for legal costs. . . . The allocation of the settlement amount implies that plaintiff had a retainer agreement with his attorney to pay them [sic] 1/3 out of any settlement, net of costs, as a contingent fee. . . . This Court's Opinion and Order (Document No. 41) and Judgment (Document No. 42) of December 17, 2014, awarded plaintiff damages of $56,755.27 (before interest), which suggests that the agreed settlement amount was fair and reasonable. . . . The written agreement that the attorneys on both sides of the case agreed to contained a confidentiality provision and a release. We wanted the former because according to defendants, plaintiff had repeatedly stated his intention to disparage defendants and their business in every way possible. We wanted the latter because plaintiff had said to defendants that he had many other claims against defendants, but refused to specify what they were. . . . The attorneys for both sides had agreed to the agreement contained in Exhibit 2, prior to the redlined changes, as can be seen from Mr. Kirschenbaum's August 21 message, in which he informed me, "[Mr. Wei] will be come [sic] in the next couple of days to review and sign." But in his August 27 message, he insisted on the last-minute changes marked in red on Exhibit 2, including significant changes to the General Release provision saying, "My client insists on these changes to the agreement. I am sorry to change it after the fact, but its [sic] either these changes are accepted or we have to move forward." . . . On behalf of defendants, I agreed to the changes. It seemed clear that, with the changes, plaintiff had agreed to the release provisions in particular, and to the overall settlement agreement. . . . Then plaintiff requested a meeting to go over and sign the agreement, and defendants and I agreed to that. . . . Even though it was apparent that he must have had a retainer agreement with his attorneys, and had supposedly approved the settlement agreement subject to changes that we agreed to, at the meeting on September 12, plaintiff expressed amazement that his attorneys' fees were supposed to be paid out of the $80,000 settlement. He also refused to accept the release provision, which incorporated the changes he had demanded, and the confidentiality provision. He said that he would have more lawsuits other than this one against

7

defendants, but refused to say what the grounds were. . . . Mr. Kirschenbaum finally asked plaintiff, "What do you want?" Plaintiff did not say what would satisfy him. He simply walked away from an agreement that had taken months to finalize, that he had agreed to.

Teo Su Jin submitted his declaration in which he states that Shen consulted with him regularly, during the five months after the complaint was filed, concerning ongoing settlement negotiations with Kirschenbaum. According to Teo Su Jin, he asked for a confidentiality provision in a settlement agreement because the plaintiff "had gone to three Chinese newspapers after filing this action, and he told me he was going to do everything he could to let the world know that I am a bad person with a bad business." Teo Su Jin states that the plaintiff refused to identify what other claims he had against the defendants, which prompted the defendants' request for a general release. According to Teo Su Jin, during the September 12, 2013 meeting with the plaintiff, the "plaintiff went crazy over the idea that any of the $80,000 would go to his attorneys. He also objected to the confidentiality and release provisions that had been agreed to." Teo Su Jin contends that, on September 13, 2013, the plaintiff telephoned him, demanding an additional $50,000 to settle the case, which he wanted to receive on the side, meaning that he would sign a settlement agreement for $80,000 and clandestinely receive the extra money. According to Teo Su Jin, in November 2013, the plaintiff came to the defendants' restaurant, threatened and demanded $130,000 to settle the case. Shortly afterwards, the plaintiff visited the defendant restaurant threatening "loudly . . . bad publicity and lawsuits."

*Plaintiff's Reply*

The plaintiff contends that the defendants' focus on previous settlement discussions is misguided and contrary to established law. According to the plaintiff, "[i]f Defendants wanted to resolve the case and prevent Plaintiff from recovering attorney's [sic] fees post-trial, Defendants

could and should have made an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure." The plaintiff contends that he did not act in bad faith, and the defendants do not contest that he received more money than he would have received under the proposed settlement offers, namely, the August 2013 offer of $52,967, and the March 2014 offer of $49,403, since he was awarded a judgment of $64,857.64, exclusive of any attorneys' fees and costs. According to the plaintiff, "Defendants do not deny that they never extended a settlement offer that did not include a confidentiality clause and general release, or that Plaintiff refused to consent to a confidentiality clause and general release." Moreover, any settlement proposal, including the one that contained any release of the FLSA claims, would have to be approved by the Court, and it "could very well have been rejected in light of this Court's recent opinion holding that confidentiality clauses violate the remedial purpose of the FLSA." The plaintiff asserts that the defendants' "argument, if accepted, would have catastrophic consequences with respect to FLSA litigation in this Circuit," because "a defendant would be better served making informal settlement offers and attaching benefits that are unfair and which may even contravene public policy," and "a plaintiff would have to seriously consider accepting unwarranted terms, for if she insisted on a judgment with no strings attached she would run the risk of losing subsequent attorney's fees."

The plaintiff contends that his counsel performed their work in a diligent, straightforward manner, in response to the issues raised by the defendants. The plaintiff asserts that the fees should not be reduced just because the case is relatively straightforward. Moreover, the defendants' contention that the plaintiff overstaffed the case with senior attorneys is meritless because JK is a small firm that handles a large number of individual and class-action lawsuits and does not have the luxury of limiting senior attorneys to complex cases only. The plaintiff contends that the defendants' argument that his "counsel improperly recorded their time in 'block billing'

9

goes against the law in this Circuit," because "block billing" is permissible as long as no evidence exists that hours billed were independently unreasonable or that the block billing was mixing tasks that were not all compensable or not compensable at the same rate. The plaintiff contends that, "given that courts sometimes make across the board cuts of attorney hours in fee application," and "for purposes of resolving this motion, Plaintiff's Counsel would not contest a reduction to 250 hours (*i.e.*, a 15% reduction in all billed hours across the board)."

In a footnote to the plaintiff's memorandum of law, the plaintiff contends that expending 19.9 hours on a motion in limine was reasonable because that "motion successfully prevented the Defendants from offering evidence into the record." The plaintiff asserts also that Weiner's spending 5.1 hours preparing for the final pre-trial conference was reasonable, and 2 hours researching a potential motion for reconsideration was reasonable because "it was in response [to] Plaintiff's counsel informing Defendants that they would file a motion for reconsideration regarding the calculation of damages that resulted in the parties agreeing to a satisfaction of judgment." According to the plaintiff, "by limiting [the plaintiff's] application to 250 hours, Plaintiff's counsel does not seek compensation for hours spent on the instant motion."

***Legal Standard***

In an FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees." NYLL § 198 1-a. District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 151 (2d Cir. 2008). When exercising their discretion to determine the

reasonableness of the attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
>
> Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

***Application of Legal Standard***

<u>Hourly Rates</u>

The defendants provide no binding authority for the proposition that the "weighted average billing rate" should be used in determining a reasonable hourly rate. It is not clear why the defendants base their excessive-hourly-rates argument on the "weighted average billing rate,"

11

where Kirschenbaum identifies, in his affirmation, the hourly rates requested by each person who worked on this case. The defendants' reliance on the "weighted average billing rate" is less clear in light of their apparent concession that Kirschenbaum and Weiner "have good reason to charge a substantial rate for their time."

No evidence was presented by the plaintiff about the attorneys' customary hourly rates. In his affirmation, Kirschenbaum provided "a chart representing each attorney's hours and the hourly request." However, no evidence is presented that the amount of "the hourly request" for each attorney and paralegal who worked on this case is the customary hourly rate charged by each such person.

Kirschenbaum contends, in his affirmation, that JK litigated this case "on a wholly contingent basis" and that the "Plaintiff's expenses" in the amount of $6,490.25, "were paid on his behalf pursuant to the terms of the retainer agreement." No retainer agreement was provided to the Court substantiating these contentions, and Kirschenbaum did not identify who paid the plaintiff's expenses "on his behalf."

Concerning the experience, reputation and ability of the attorneys, Kirschenbaum provides sparse information. The paralegals who claim hours worked have not been identified, and no information was provided about those persons or their experiences, reputations and abilities. Absent any information about the persons claiming to be paralegals, who expended 22.8 hours of work at an hourly rate of $100, it is impossible to determine whether the hourly rate and the hours claimed are reasonable. Thus, awarding fees for the hours of work claimed by paralegals is not warranted.

The only information provided by Kirschenbaum about Seliger is that she: (a) graduated from law school in 2002; and (b) worked at various places before "becoming self-employed." No

evidence is presented to the Court about Seliger's relationship with JK or the type of work she performed in the various places where she worked. Thus, not having any information about the nature of Seliger's experience, reputation and ability, and absent any information about her position, if any, with JK, it is impossible for the Court to determine whether the requested hourly rate of $300, and 10 hours of work she performed, are reasonable. Thus, awarding fees for the hours of work claimed by Seliger is not warranted.

With respect to "Mr. Kadushin," Kirschenbaum failed to identify this attorney fully and indicate his position within JK. Assuming that "Mr. Kadushin" is "Matthew Kadushin" listed in Kirschenbaum's "chart representing each attorney's hours and the hourly request," the only information provided about Kadushin is that he: (i) practiced criminal law for 9 years before joining JK, in October 2009; and (ii) "[t]he majority of his current docket involves wage and hour lawsuits against the hospitality industry." This information is not sufficient to inform the Court in its assessment of Kadushin's reasonable hourly rate and hours worked because, apart from the length of his criminal practice tenure, it says nothing about the nature of his experience, reputation and ability. Although the defendants' memorandum of law contends that Kadushin "seeks an associate rate of $325 per hour," no evidence is provided to the Court that Kadushin is an associate or, if he is, how long he has held that position. The fact that "[t]he majority of his current docket involves wage and hour lawsuits against the hospitality industry" is not helpful in assessing Kadushin's skills and experience, as it is unknown whether Kadushin is a partner, an associate, or of counsel to JK, how many cases in "his current docket" involve wage and hour lawsuits against the hospitality industry, the level of success or client satisfaction he has achieved handling his current docket, whether he handled any wage and hour lawsuits prior to this action and, if so, how many and the results achieved. Accordingly, it is impossible for the Court to assess whether

Kadushin's hourly rate and the hours he worked on this action are reasonable. As a consequence, awarding fees for the hours of work claimed by Kadushin is not warranted.

Concerning Schulman, Kirschenbaum informed that she: (a) graduated from law school in 2008; (b) joined JK, in January 2009; and (c) since joining JK, "practiced exclusively on employment wage and hour and discrimination cases." No evidence was provided to the Court about Schulman's position within JK, or any additional information that would inform the Court about Schulman's experience, reputation and ability. Although the defendants' memorandum of law contends that Schulman "seeks an associate rate of $300 per hour," no evidence is presented to the Court that Schulman is an associate or, if so, how long she has held that position. The evidence provided by Kirschenbaum about Schulman is not sufficient to assist the Court in assessing whether Schulman's hourly rate and the hours she worked on this action are reasonable. Thus, awarding fees for Schulman's legal services is not warranted.

Relevant information provided by Kirschenbaum about Weiner is that he: (1) spent 30 years as a senior trial attorney, prosecuting wage and hour violations for the United States Department of Labor; (2) spent 5 years with the Epstein Becker law firm, representing employers in wage and hour lawsuits; and (3) "is well regarded as a premier litigator in his field." Although the defendants contend in their memorandum of law that Weiner "seeks a senior associate rate of $350 per hour," no evidence is provided about Weiner's position with JK, when he joined JK, or the work that he performs at JK. While evidence provided about Weiner is not detailed, it is sufficient to convince the Court that Weiner's experience, reputation and ability are well recognized, as the defendants concede.

Kirschenbaum stated that he is JK's managing partner and, since he was admitted to the bar in 2006, his practice involves representing food-service workers in employment-related claims

14

against the hospitality industry. Kirschenbaum also described his firm's accomplishments in the area of labor law. Kirschenbaum's experience, reputation and skill are evidenced sufficiently in the instant motion, as well as conceded by the defendants. The plaintiff made citation to cases in this district, showing that Kirschenbaum's and Weiner's hourly rates are within the range of what a reasonable client would be willing to pay for similar services by attorneys of reasonably comparable experience, reputation and ability. The Court finds that Kirschenbaum's $375 hourly rate and Weiner's $350 hourly rate are reasonable.

<u>Hours Worked</u>

This was a simple, straightforward action alleging the following claims: (a) FLSA and New York minimum wage; (b) FLSA and New York overtime compensation; (c) New York spread of hours; (d) New York notice requirements; and (e) New York deductions for tools of the trade. Discovery was limited and only two depositions were conducted.

The defendants contend that the plaintiff "cannot be said to have prevailed by receiving judgment for things that were admitted by defendants . . . in the Pretrial Order," but they fail to refer to any paragraph of the "Pretrial Order" in which they admitted liability for any of the plaintiff's claims. Contrary to the defendants' contention, the defendants did not admit liability on any of the plaintiff's claims, which were all tried. The Court found, after a bench trial, that the defendants were liable to the plaintiff on all his claims. Although the plaintiff failed to establish an amount of damages for the cost of purchasing and maintaining bicycles, and the defendants received credit for: (a) tips, for the period prior to January 1, 2011; and (b) meals they furnished to the plaintiff, starting July 24, 2009, the plaintiff received an award of damages on all his remaining claims, as well as liquidated damages and prejudgment and postjudgment interests, albeit less than the amount he sought.

In reply to the defendants' contention that 250 is a reasonable number of hours to have spent on this matter, "subject to downward adjustments," the plaintiff asserts that he "would not contest a reduction to 250 hours (*i.e.*, a 15% reduction in all billed hours across the board)." The plaintiff's concession that 250 hours is a reasonable number of hours as the defendants contend, rather than the requested 295.7 hours, indicates to the Court that the plaintiff concedes that the hours billed are excessive.

The plaintiff did not provide any information about: (a) the preclusion of employment by his counsel due to accepting this case; (b) the time limitations imposed by him or the circumstances; (c) the undesirability of the case; and (d) the nature and length of the professional relationship that exists between him and his counsel. The level of skill exhibited by the plaintiff's counsel, Kirschenbaum and Weiner, in providing legal services in this case was adequate. However, while the Court appreciates the fact that JK is a "small law firm that handles a large number of individual and class action lawsuits every year," and "does not have the luxury of limiting Mr. Kirschenbaum and Mr. Weiner to complex class action lawsuits," the Court finds that the time and labor required and the lack of any novelty or difficulty respecting the questions presented in this action counsel against the duplication of work performed by one partner, Kirschenbaum, and one senior attorney, Weiner, as exhibited in the JK's billing records. For example, while Kirschenbaum billed 5.8 hours, in connection with Teo Su Jin's deposition, which he conducted, both Kirschenbaum and Weiner billed for hours worked in connection with the plaintiff's deposition, which was attended by Weiner. Similarly, Kirschenbaum billed 4.2 and Weiner 4.3 hours, respectively, in connection with the preparation of the joint pretrial order, Kirschenbaum billed 11.5 and Weiner 6.9 hours, respectively, in connection with the plaintiff's motion in limine, and Kirschenbaum billed 10.1 and Weiner 28.9 hours, respectively, in

connection with the plaintiff's post-trial submission of proposed findings of fact and conclusions of law. In light of the simple nature of this case and the limited amount of discovery, the Court finds that it was unreasonable for Kirschenbaum and Weiner to perform duplicative work on the same and simple matter and no need or justification existed for them to do so. Moreover, it was unreasonable for a senior attorney, Weiner, to bill for administrative tasks, such as "Contact courtroom deputy for status of case," or a partner, Kirschenbaum, to bill for clerical tasks, such as "Call with court," or "File satisfaction of judgment."

The Court finds that the hours billed were excessive. In light of the plaintiff's concession that a 15% reduction in the number of hours for which compensation is sought is warranted, and the Court's determination, upon review of the billing records, that the hours billed were excessive, the Court finds that the reasonable number of hours spent on this action are: (i) 40, by Kirschenbaum; and (ii) 60, by Weiner. Accordingly, the amount of reasonable attorneys' fees is $36,000, derived from Kirschenbaum's 40 hours, at an hourly rate of $375, and Weiner's 60 hours, at an hourly rate of $350.

Bad Faith

The defendants contend that any reasonable attorneys' fees sought should be further reduced or eliminated because the plaintiff acted in bad faith in connection with the settlement agreement. The plaintiff contends that he acted in good faith when he rejected the defendants' settlement offer, and the "Defendants do not deny that they never extended a settlement offer that did not include a confidentiality clause and general release, or that Plaintiff refused to consent to a confidentiality clause and general release."

"Absent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'" Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992)

(citation omitted). The plaintiff's contention that the defendants do not deny that he "refused to consent to a confidentiality clause and general release" is erroneous. The defendants deny that the plaintiff refused to consent to a confidentiality and general release. Teo Sun Jin's uncontroverted declaration establishes that, subsequent to September 12, 2013, when the plaintiff refused to sign the settlement agreement, the plaintiff approached Teo Sun Jin directly, the following day, demanding an additional $50,000 "on the side," and, in November 2013, he approached him directly, demanding $130,000, without mentioning the confidentiality and release provisions on either occasion. Moreover, Shen's uncontroverted declaration demonstrates that the most significant basis for the plaintiff's refusal to sign the settlement agreement, on September 12, 2013, was his realization, at that meeting, that his attorneys' fees would be paid out of the settlement amount. Joachim's uncontroverted declaration shows that the plaintiff made threats against Teo Su Jin and his restaurant and demanded money, without mentioning the confidentiality and release provisions of the settlement proposal. The plaintiff's subsequent, direct approach to Teo Su Jin to demand additional payments indicates to the Court that the plaintiff was not concerned with the settlement proposal's confidentiality and release provisions. Furthermore, threatening Teo Su Jin and his restaurant, while demanding additional money without any mention of the settlement proposal's confidentiality and release provisions, after refusing to sign the settlement agreement, on September 12, 2013, shows that the plaintiff did not act in good faith. As noted above, no evidence was submitted by the plaintiff to refute Teo Su Jin's and Shen's declarations.

The Court finds that the plaintiff acted in bad faith in connection with the settlement agreement because his conduct, after September 12, 2013, demonstrates that his refusal to sign the settlement agreement was not based on his concern for the confidentiality and release provisions of that document, as he now claims, but on his last-minute realization, on September 12, 2013, that

his attorneys' fees would have to be paid out of the settlement amount of $80,000. The plaintiff's contentions to the contrary, in his motion papers, are disingenuous and not supported by evidence. By refusing to sign the settlement agreement, on September 12, 2013, the plaintiff, acting in bad faith, caused his attorneys as well as the defendants' attorneys, to expend a significant number of hours to resolve the matter and consumed, unnecessarily, the parties' and the Court's resources and time. The Court finds that, in the circumstance of this case, the plaintiff's bad faith militates in favor of a 50% further reduction in the amount of attorneys' fees to be awarded. Accordingly, the plaintiff is entitled to $18,000, in reasonable attorneys' fees.

Costs

The Court finds that the plaintiff's costs, in the amount of $6,490.25, are reasonable.

*Conclusion*

For the foregoing reasons, the plaintiff's motion, Docket Entry No. 46, is granted. The plaintiff shall recover from the defendants: (a) $18,000, his reasonable attorneys' fees; and (b) $6,490.25, his costs.

Dated: New York, New York  
March 9, 2015

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE